**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2006-A MORTGAGE-BACKED CERTIFICATES, SERIES 2006-A, | No. 3:17-cv-00382 (MPS) |
| *Plaintiff*, v. | |
| RONEY HARRIS, | |
| *Defendant*. | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-A Mortgage-Backed Certificates, Series 2006-A ("HSBC") brings a mortgage foreclosure action against Defendant Roney Harris, who is proceeding *pro se*.  On October 10, 2021, HSBC moved for summary judgment as to liability.  ECF No. 169.  In response, Harris filed a "Motion for Default for Failure to Appear with Proof of Claims, and[] for Contempt and Refusal by HSBC and its Counsel to Properly Respond to Court Orders," a motion to strike the motion for summary judgment, and a response.  *See* ECF Nos. 173, 176, 182.  For the reasons below, the Court grants HSBC's motion for summary judgment as to liability.

**II.      BACKGROUND**

Before reciting the facts of this case, the Court will address Harris's improper responses to HSBC's motion for summary judgment.  Although HSBC filed and served the notice to *pro se* litigant required by Local Rule 56, ECF No. 170, which explains in detail what such a litigant must do to respond properly to a motion for summary judgment, Harris's responses did not

1

comply with Local Rule 56 because he failed to include a Local Rule 56(a)(2) Statement. *See* ECF Nos. 173, 176, 182. Under Local Rule 56, the "party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by the Federal Rule of Civil Procedure 56(c)." L. R. Civ. P. 56(a)(2)(i). Each denial must be accompanied "by a specific citation" to admissible evidence and "[f]ailure to provide specific citations to evidence in the record … may result in the Court deeming admitted certain facts that are supported by the evidence." L. R. Civ. P. 56(a)(3). Although he makes objections to the arguments in HSBC's memorandum of law, ECF No. 182, Harris fails to address the statement of material facts in the Local Rule 56(a)1 Statement. Thus, to the extent that HSBC presents evidence supporting its material facts, the Court will deem them admitted because Harris failed to properly deny those facts under Local Rule 56.[1]

The following facts are taken from the HSBC's Local Rule 56(a) Statement and HSBC's responses to Harris's requests for admission, and are undisputed unless otherwise indicated. In support of its motion for summary judgment, HSBC submitted an affidavit and a declaration from Kevin Flannigan, who is a Senior Loan Analyst at Ocwen Financial Corporation. ECF No.

---

[1] In addition, Harris's most recent response to the motion for summary judgment is untimely. HSBC filed its motion for summary judgment on October 10, 2021, and so, the deadline for Harris's response was October 31, 2021. ECF No. 169; L. R. Civ. P. 7 (stating that "all opposition memoranda shall be filed within twenty-one … days of filing of the motion"); *see* Fed. R. Civ. P. 6(a)(1) (providing that the deadline should be calculated by "exclud[ing] the day of the event that triggers the period" and "count[ing] every day, including intermediate Saturdays, Sundays, and legal holidays"). Even if Harris received the motion by mail, he is only allowed an additional three days under Federal Rules of Civil Procedure. Fed. R. Civ. P. 6(e). Harris did not file his response to the motion for summary judgment until November 10, 2021. ECF No. 182. HSBC's Notice also informed Harris that his opposition was due within twenty-one days of the filing of the motion for summary judgment. ECF No. 170 at 2. Nonetheless, the Court has reviewed his response and addressed his arguments herein (at least those that it has not previously addressed in other rulings).

169-3 at 2; ECF No. 169-4 at 2.  Ocwen's indirect subsidiary, PHH Mortgage Corporation, services HSBC's loans.  ECF No. 169-3 at 2.  Flannigan is "responsible for reviewing certain mortgage loans serviced by PHH, including the mortgage loan at issue in this case."  *Id.* at 2. Attached with his affidavit and declaration are copies of the Note, the Mortgage, record of the assignment, the pooling and servicing agreement, the loan payment history, notices of default, and payoff statements. [2]  *See id.* at 6–67; ECF No. 169-4 at 6–226.

On February 27, 2006, "Harris executed and delivered a note to Fremont Investment & Loan (the "Note") in the original principal amount of $508,000."  ECF No. 169-3 at 3, 7–10.  On the same date, "Harris … executed and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont Investment & Loan (the 'Mortgage'), encumbering the [single-family residence] located at 83 Greentree Drive, Glastonbury, Connecticut, 06003 (the 'Property')."  *Id.* at 3–4, 12.  The Mortgage was recorded with the Town of Glastonbury on March 9, 2006.  *Id.* at 4.

---

[2] Harris argues that the Court should not consider the affidavit or declaration because Flannigan's averments or declarations are not supported by admissible evidence and Flannigan, as an employee of Ocwen rather than HSBC, is a "non-party."  ECF No. 182 at 12–13.

The Court disagrees and finds that it can consider Flannigan's affidavit and declaration for the purposes of this motion.  *See* Fed. R. Civ. P. 56(c)(1)(A), (c)(4).  "An affidavit or declaration used to support … a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. 56(c)(4).  Flannigan's affidavit and declaration satisfy these requirements, and the evidence attached to them is admissible under the business record exception to the rule against hearsay.  *See* Fed. R. Evid. 803(6).  "To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of regularly conducted business activity and also that it was the regular practice of that business activity to make the record."  *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (internal quotation marks, brackets, and citation omitted).  "The custodian need not have personal knowledge of the actual creation of the document to lay proper foundation."  *Id.* (internal quotation marks and citation omitted).  There is no requirement that the declarant or affiant be an employee of HSBC.  It is sufficient that Flannigan was aware of PHH's recordkeeping practices. Because Flannigan's job duties included reviewing "certain mortgage loans serviced by PHH," and he had personal knowledge of the matters or had personal knowledge through his review of the loan servicers' business records, his submissions are adequate.  ECF No. 163-3 at 1–2; *see Monty v. U.S. Bank, N.A. ex rel. J.P. Morgan Mortg. Acquisition Trust 2006-CW*, No. 15-CV-97, 2015 WL 6441725 at *5 (D. Vt. Oct. 22, 2015) (finding that the affiants, who were employees of the defendant's loan servicer, satisfied the business records exception when they "stated that their job duties included 'reviewing company business records' and that they obtained personal knowledge for their statements based upon their review of those records").

The Note was endorsed in blank by Fremont Investment & Loan.[3]  ECF No. 169-4 at 3, 7, 10 (Note stating that the "[borrower] understand[s] that the Lender may transfer this Note" and that "[t]he Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder,'" and showing the blank endorsement on page 10).  The Note required Harris to make monthly payments of principal and interest and stated that he would be in default if he failed to "pay the full amount of each monthly payment on the date it is due."  *Id.* at 7– 8.  In the event of a default, the Note Holder could send notice of the default, which informed the borrower that he must pay the overdue amount by a certain date or the Note Holder could elect to accelerate the loan.  *Id.* at 8.  The Note specified that the notice of default could be delivered or mailed via first-class mail.  *Id.*  HSBC, or its agents, possessed the original Note prior to the commencement of this action and is currently in possession of it.  *Id.* at 3–4; ECF No. 169-3 at 4.

The Mortgage required Harris to "pay when due the principal of, and interest on, the debt evidenced by the Note" and "pay funds for Escrow Items," such as taxes and insurance.  *Id.* at 14–15.  The Mortgage also required the "Lender … [to] give notice to [Harris] prior to acceleration" of the loan.  *Id.* at 24.

On May 1, 2006, "Harris['s] loan was pooled into the Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates, Series 2006-A."  ECF No. 169-4 at 3.   The pooling and servicing agreement identified Fremont Investment & Loan as the "Sponsor, Originator and Servicer" and HSBC as the Trustee of the Trust.  *Id.* at 16.  As Trustee, HSBC "took the Note for value, in

---

[3] *See* ECF No. 169-4 at 10.  "If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a 'special endorsement.' When special endorsed, an instrument becomes payable to the identified person and may be negotiated only by endorsement of that person. … If an endorsement is made by the holder of the instrument and is not a special endorsement, it is a 'blank endorsement.' When endorsed in the blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." Conn. Gen. Stat. § 42a-3-205(a), (b).

good faith, without notice that (a) the instrument was overdue or had been dishonored, (b) there was an uncured default with respect to payment of another instrument issued as part of the same series, (c) the instrument contains an unauthorized signature or had been altered, (d) any other person or entity has or had a claim to recover the instrument or its proceeds, and (e) any party has or had a defense or claim in recoupment." *Id.* at 3.  MERS also assigned the Mortgage to HSBC on October 22, 2008, and the assignment was recorded with the Town of Glastonbury on December 1, 2008.  ECF No. 163-3 at 4, 28.  HSBC is not the owner of the Note and Mortgage, ECF No. 108-2 at 6, but it is the holder of the Note and assignee of the Mortgage, ECF No. 169-3 at 4.

Starting July 1, 2007, Harris failed to make the monthly payments required by the Note and defaulted.  *Id.* at 4, 32–42.  As a result, on August, 16, 2007, HSBC, or its counsel, sent Harris a notice of default, which stated that he needed to pay $10,335.52 within thirty days in order to avoid acceleration of the loan.  *Id.* at 4, 43–44.  On October 7, 2011, HSBC's loan servicer sent another notice of default via certified mail, which required Harris to pay $275,306.12 within forty-five days to avoid acceleration of the loan.  *Id.* at 4, 46–48.  Harris did not make any payments to cure the default and continues to be in default.  *Id.* at 5, 50–67. "[HSBC] elected to accelerate the balance due on the Note and declared the Note to be due in full."  *Id.* at 5.

### III.    PROCEDURAL HISTORY

HSBC initiated this foreclosure action in Connecticut state court on January 27, 2017. ECF No. 1-1 at 14.  Harris removed the action to this Court on March 3, 2017.  ECF No. 1.  On December 4, 2018, HSBC filed a notice of bankruptcy stay due to Harris's bankruptcy case pending in the United States Bankruptcy Court, District of Massachusetts (Springfield).  ECF

No. 22.  Thus, the case was administratively closed until the termination of the automatic bankruptcy stay.  ECF No. 23.  On October 24, 2019, HSBC moved to reopen the case after receiving relief from Harris's automatic bankruptcy stay, and the Court granted that motion. ECF Nos. 24, 25; *see In re: Harris*, No. 17-bk-31042, 2018 WL 6729689 (Bankr. D. Mass. Dec. 21, 2018).

On October 10, 2021, HSBC moved for summary judgment as to liability.   ECF No. 169. In response, Harris objected to the motion for summary judgment by filing his "Motion for Default for Failure to Appear with Proof of Claims, and[] for Contempt and Refusal by HSBC and its Counsel to Properly Respond to Court Orders."  ECF No. 173.  Harris then moved to strike HSBC's motion for summary judgment based on the alleged "fraud on the public record" and the alleged "denial of [Harris's] rights under the color of law."  ECF No. 176.  Harris also filed a response to the motion for summary judgment on November 10, 2021, which was late. ECF No. 182.

## IV.   LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d

6

Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## V. DISCUSSION

### A. Prima Facie Case for Mortgage Foreclosure

To establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence either that it is the owner of the note and mortgage or that it otherwise has the right to enforce those instruments, that the defendant mortgagor has defaulted on the note, and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. *See GMAC Mortg., LLC v. Ford*, 144 Conn. App. 165, 176 (2013); *J.E. Robert Co., Inc. v. Signature Properties, LLC*, 309 Conn. 307, 327–28 (2013) (concluding that "a loan servicer need not be the owner or holder of the note and mortgage in order to have standing to bring a foreclosure action if it otherwise has established the right to enforce those instruments"). "[A] court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortg., LLC*, 144 Conn. App. at 176

#### i. Right to Enforce the Mortgage

One way to make out a prima facie case is to show ownership of the note and mortgage, but a plaintiff lacking ownership can still do so by demonstrating that it has the right to enforce the mortgage. Connecticut courts have held that "a plaintiff who is not the owner or holder of

the note and mortgage" can still enforce the note when the plaintiff "has established the right to enforce those instruments." *Berkshire Bank v. Hartford Club*, 158 Conn. App. 705, 710 n.4 (2015).

Connecticut courts use a burden-shifting framework to determine whether the plaintiff has ownership of or the right to enforce the note and mortgage. The first step focuses on the ownership of the note and mortgage. "Being the holder of a note satisfies the plaintiff's burden of demonstrating that it is the owner of the note because under [Connecticut] law, the note holder is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [Conn. Gen. Stat.] § 49-17." *Am. Home Mortg. Servicing, Inc. v. Reilly*, 157 Conn. App. 127, 133 (2015) (internal quotation marks omitted) (quoting *RMS Residential Properties, LLC v. Miller*, 303 Conn. 224, 231–32 (2011)). A holder is defined as a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Conn. Gen. Stat. § 42a-1-201(21)(A). "The possession by the bearer of a note endorsed in blank imports prima facie evidence that he acquired the note in good faith for value and in course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note endorsed in blank establishes [the plaintiff's] case prima facie against the makers and [the plaintiff] may rest there." *Am. Home Mortg. Servicing, Inc.*, 157 Conn. App. at 133 (brackets and citation omitted). Then, the burden shifts to "the defendant to set up and prove the facts which limit or change the plaintiff's rights." *Id.* (internal quotation marks and citation omitted). "If the defendant rebuts the presumption that the plaintiff was the owner of the debt at the time that the action commenced, then the burden would shift back to the plaintiff to demonstrate that the owner has vested it with

the right to receive the money secured by the note." *Id.* at 133–34 (internal quotation marks omitted) (quoting *J.E. Robert Co.*, 309 Conn. at 325 n.18 (2013)).

In this case, there is no dispute that HSBC possessed the Note endorsed in blank before initiating this foreclosure action.  Flannigan stated in his declaration and affidavit that HSBC, or its agents, possessed the Note, which is endorsed in blank, prior to the commencement of this foreclosure action and is currently in possession of the Note.  ECF No. 169-3 at 4; ECF No. 169-4 at 4, 10.  Flannigan also provided a copy of the Note.  ECF No. 169-3 at 7; ECF No. 169-4 at 7.  HSBC's evidence establishes that it is the holder, "creat[ing] a presumption … [that it is] also the owner of the note and [can] enforce the debt."  *Am. Home Mortg. Servicing, Inc.*, 157 Conn. App. at 134; *see also U.S. Bank Nat'l Ass'n v. Christophersen*, 179 Conn. App. 378, 385 (2018) ("The assignment of the note to the plaintiff and the plaintiff's possession of it at the commencement of the foreclosure action was prima facie evidence that the plaintiff was the holder of the note at the relevant time and thus was entitled to enforce the note.").

To rebut the presumption, Harris points to HSBC's admission that "it is not the owner of the Note and Mortgage but … it has been the holder of the Note, vested with the right to enforce the Note, since at least February 16, 2016, prior [to] the commencement of the instant foreclosure action."  ECF No. 108-2 at 6.  Thus, Harris meets the burden of rebutting the presumption that HSBC owns the Note.  *See Am. Home Mortg. Servicing*, 157 Conn. App. at 134 (finding that the plaintiff's acknowledging that it was not the owner of the note sufficed to rebut the presumption of ownership).

The burden then shifts back to HSBC to "demonstrate[] that it had the authority to foreclose on the mortgage securing the note."  *Id.*  The Court finds that there is no genuine dispute of material fact that HSBC has such authority because it has provided evidence that, in

addition to possessing the original note endorsed in blank (either by itself or through its agents, ECF No. 169-4 at 3–4), it received the Note by transfer and the language of the Note authorizes it, as the Note's holder, to enforce the debt.  According to Flannigan, Harris's loan was pooled into the Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates, Series 2006-A.  ECF No. 169-4 at 3.  HSBC serves as the Trustee of that Trust and, as Trustee, took the Note for value.  *Id.*  The Note states that the "[borrower] understand[s] that the Lender may transfer this Note" and that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  ECF No. 169-3 at 7.  The Note further provides that the Note Holder may accelerate the Note, send notice of default to the borrower, and enforce the Note.  ECF No. 169-4 at 8.  Thus, based on the fact that HSBC is the holder and the Note's language expressly allows the holder to enforce the debt, the Court finds that HSBC has the authority to enforce the Note.  *See Am. Home Mortg. Servicing*, 157 Conn.App. at 138 (finding that although the plaintiff did not own the note, the plaintiff's status as note holder and the note's language, which provided the plaintiff the authority to enforce the debt, were sufficient to show that the note's owner had "unequivocally authorized [the plaintiff] to enforce the debt").

Harris has submitted no evidence to the contrary.  Instead, he argues that HSBC must show "negotiation for the purchase of the debt" in order to prove holder status.  ECF No. 182 at 19.  The Court disagrees.  Under Connecticut law, when a note is endorsed in blank, "an instrument becomes payable to bearer and may be negotiated *by transfer of possession alone* until specially endorsed."  Conn. Gen. Stat. § 42a-3-205(b) (emphasis added); *see also* Conn. Gen. Stat. § 42a-3-203 ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as

a holder in due course."). Thus, HSBC is not required to demonstrate negotiation for value to prove holder status.

The Court finds that as the holder of the Note endorsed in blank, HSBC has the authority to foreclose on the mortgage.[4]

### ii. *Harris Defaulted on the Note*

Default is defined by the Note as when the borrower fails to "pay the full amount of each monthly payment on the date it is due. ECF No. 169-3 at 8. Harris failed to make the monthly payments required by the Note starting July 1, 2007. *Id.* at 4. Flannigan submitted copies of the loan payment history and payoff statements showing that Harris has not made the monthly payments. ECF No. 169-3 at 32–41, 50–67. Harris submitted no evidence to the contrary. Thus, the Court finds that there is no genuine dispute of material fact that Harris, by failing to make the monthly payments, was in default under the Note.

### iii. *Satisfaction of the Conditions Precedent to Foreclosure*

The Note required the holder to mail the borrower a written notice of default giving the borrower an opportunity to cure the default by paying the overdue amount by a certain date. ECF No. 169-3 at 8. If the borrower failed to cure, the holder could elect to accelerate the loan and require the borrower to pay the full amount immediately. *Id.* The Note specifies that the

---

[4] In addition, MERS assigned the Mortgage to HSBC on October 22, 2008. ECF No. 169-3 at 4. As an assignee, HSBC can foreclose on the debt in its own name. *See* Conn. Gen. Stat. § 52-118 ("The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name."); *U.S. Bank Nat'l Ass'n*, 179 Conn.App. at 385 (stating that an assignee may sue in his own name or in the name of his assignor).

Harris also argues that "[t]he alleged assignment of mortgage *chain* for the named claimant was broken with Fremont's alleged, two assignments: where its second purported assignment was a fraudulent conveyance, since Fremont was no longer in business when the alleged October 22, 2008 assignment was made." ECF No. 182 at 16 (emphasis in original). Harris did not submit any evidence to support his argument. *See Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed.R.Civ.P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading … or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." (internal quotation markets and citation omitted)).

notice by the holder must be delivered or sent by first-class mail to the Property or another address selected by the borrower. *Id.* There is no dispute that HSBC sent Harris two notices of default. *Id.* at 4. The first notice was sent on August 17, 2007, and the second notice was sent via certified mail on October 7, 2011. *Id.* at 43, 46–47. The notices complied with the Note's requirements. Therefore, the Court finds that there is no genuine dispute of material fact that HSBC satisfied the conditions precedent to foreclosure.

Because the undisputed evidence in the record shows that HSBC has the authority to enforce the loan, that Harris defaulted, and that HSBC satisfied the conditions precedent to foreclosure, the Court finds that HSBC has made out its case for foreclosure.

## B.  Harris's Arguments[5]

In Harris's opposition to the motion for summary judgment, he advances many arguments—none of which preclude HSBC from pursuing foreclosure. First, Harris argues that HSBC is in violation of lift-stay orders from the U.S. Bankruptcy Court. ECF No. 182 at 35. The Court gave Harris an opportunity to demonstrate that there is a bankruptcy stay in effect, but he has provided no such evidence. *See* ECF No. 144. The U.S. Bankruptcy Court also granted HSBC relief from the automatic bankruptcy stay arising out of Harris's bankruptcy filed in 2017. *In re: Harris*, WL 6729689, at *10.[6]

---

[5] The Court granted HSBC's motion for sanctions and entered default judgment against Harris on his defenses and dismissed his counterclaims. *See* ECF No. 184. Thus, the Court declines to consider any of Harris's special defenses.

[6] To the extent that Harris is referring to his 2008 bankruptcy, the U.S. Bankruptcy Court has already determined that the case was closed and that the automatic stay provisions no longer apply. *See In re Harris*, No. 08-bk-31056, 2016 WL 3412640, at *10 (Bankr. D. Mass. May 27, 2016) ("As of July 22, 2011, when the Bankruptcy Case was closed, the Property was no longer property of the bankruptcy estate, and the automatic stay provisions ceased to apply.").

Second, he argues that HSBC lacks standing to enforce the mortgage. *See e.g.,* ECF No. 182 at 17. However, the Court has already found that HSBC has standing, ECF No. 47 at 6–7, and as shown above, the terms of the Note itself give HSBC standing to enforce the Note as a holder.

Third, Harris argues that the foreclosure action is time-barred because of Connecticut's "6-year statute of limitations for enforcement of promissory notes." ECF No. 182 at 40. As noted, however, the Court has already entered default against Harris as to all his defenses, and the statute of limitations is an affirmative defense. *See* note 5, *supra*; Fed. R. Civ. P. 8(c). In any event, in Connecticut, "a statute of limitations does not bar a mortgage foreclosure." *Fed. Deposit Ins. Corp. v. Owen*, 88 Conn. App. 806, 815 (2005).[7]

Fourth, Harris argues that he "did not *execute* the alleged[] transaction documents … since the alleged mortgage was victim of notary and witness fraud." ECF No. 182 at 16 (emphasis in original). Specifically, Harris alleges that "[o]ne purported <u>witness</u> to the alleged closing was *not* at the purported closing … and, the Notary at the alleged closing later included a party as a witness who was not present at the closing." *Id.* (emphasis in original). Again, Harris has provided no evidence supporting his assertions.[8] There is no dispute that Harris signed the mortgage. Even if there was only one witness present, a mortgage with this defect is validated under Connecticut law. *See* Conn. Gen. Stat. § 47-36aa(a)(2) ("Any … mortgage … in this state recorded after January 1, 1997 … contain[ing] any one or more of the following defects or omissions[, including if the instrument is attested by one witness only or by no witnesses,] is as

---

[7] In addition, a mortgage is not the same as a promissory note. *See Ankerman v. Mancuso*, 271 Conn. 772, 777–78 (2004) (defining promissory notes as a "written contract for the payment of money," and a mortgage as a "conveyance of title to property that is given as security for the payment of a debt").

[8] In support, Harris cites Exhibit A. ECF No. 182 at 16. Exhibit A is a certified copy of an unsigned of "Notification of Intent to Rescind" Harris's mortgage and does not include an affidavit. *Id.* at 46.

valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded.").

## VI.  CONCLUSION

The Court finds that HSBC has demonstrated the elements of its claim for mortgage foreclosure action and GRANTS its motion for summary judgment.

IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              November 23, 2021

14