UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2006-A MORTGAGE-BACKED CERTIFICATES, SERIES 2006-A,<br><br>*Plaintiff*,<br>v.<br><br>RONEY HARRIS,<br><br>*Defendant*. | No. 3:17-cv-00382 (MPS) |

**FINDINGS, ORDER, AND JUDGMENT OF STRICT FORECLOSURE**

On November 23, 2021, the Court granted summary judgment to Plaintiff HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-A Mortgage-Backed Certificates, Series 2006-A ("HSBC"), as to liability in this action to foreclose a residential mortgage. On December 14, 2021, HSBC moved for a judgment of strict foreclosure as to the residential property located at 83 Greentree Drive, Glastonbury, Connecticut (the "Property"). ECF No. 196. The mortgagor, Defendant Roney Harris, filed an objection to that motion on December 30, 2021. ECF No. 203. On February 2, 2022, the Court held an evidentiary hearing on the motion for judgment of strict foreclosure. Based on the record and the evidence presented at the hearing, the Court GRANTS the motion for judgment of strict foreclosure. The Court assumes familiarity with its November 23, 2021 ruling granting summary judgment to HSBC. ECF No. 185.

A. Findings of Fact and Conclusions of Law

At the hearing, HSBC presented two witnesses: (1) Mark Weinstein, a residential real estate appraiser, and (2) Kevin Flannigan, an employee of Ocwen Financial Corporation

1

("Ocwen"). Ocwen's subsidiary, PHH Mortgage Corporation, services the mortgage loan at issue. The Court found both witnesses to be credible.[1] The Court further found Weinstein's valuation analysis of the Property to be thorough and persuasive. Weinstein's determination that the fair market value of the property is $640,000 is accepted by the Court.[2] *See* Pl.'s Ex. 1 at 3. Therefore, the Court finds by a preponderance of the evidence that the fair market value of the property is $640,000.

HSBC also presented the original note and a certified copy of the mortgage at the hearing.[3] The Court finds the purported original note to be the original based on its own observations, including that (1) the document contained multiple staple holes, suggesting that it had been unstapled and re-stapled multiple times for copying, and the staple holes corresponded to marks on the copy introduced into evidence, (2) the signature and initials appeared to be in original ink, and (3) the signature of Harris appeared to match his signatures on his filings in this lawsuit, including his objection to strict foreclosure, *see* ECF No. 203 at 5. Also supporting the Court's finding that the note presented to it was the original note were bailee letters and a PHH business record introduced into evidence at the hearing showing that the chain of possession of the original note ended with Plaintiff's counsel, Tara Trifon of Locke Lord LLP, who produced the original note at the hearing. *See* Pl.'s Ex. 7–10. HSBC also presented a certified copy of the mortgage with a raised stamp from the Glastonbury Town Clerk, certifying it was a copy of the

---

[1] The Court permitted Mr. Flannigan to testify over Zoom contemporaneously from Houston, Texas after finding, for reasons detailed on the record at the hearing, that the current state of the pandemic, in which case counts have been surging to record levels over the past few weeks, and Flannigan's location in Texas, which would have required him to travel by air, constituted "good cause in compelling circumstances," Fed. R. Civ. P. 43(a), to allow a departure from the ordinary rule requiring in court testimony. The Court ensured that Plaintiff's counsel and Mr. Harris, who represented himself at the hearing, could see Mr. Flannigan over a Zoom link and that Mr. Flannigan could see them. The Court also itself had an excellent view of Mr. Flannigan's face and demeanor while he was testifying over the Zoom link.

[2] Harris presented no evidence to the contrary.

[3] HSBC introduced copies of the original note and the certified copy of the mortgage into evidence. *See* Pl.'s Exs. 6, 11.

mortgage filed in the Glastonbury Land Records. Both the original note and the certified copy of the mortgage were identical to copies previously submitted to the Court.

The Court also finds that HSBC was the holder of the note and mortgage at the commencement of the lawsuit on February 2, 2017.[4] ECF No. 1-1 at 1. Exhibits submitted by HSBC at the hearing, including the pooling and servicing agreement dated May 1, 2006, a schedule listing the loan relating to the Property,[5] and the PHH business record showing the chain of custody of the note (Pl.'s Ex. 7), all substantiated Flannigan's testimony that the note evidencing Harris's loan was assigned to HSBC as the Trustee for the Fremont Home Loan Trust 2006-A Mortgage-Backed Certificates, Series 2006-A. *See* Pl.'s Ex. 14–15. HSBC also presented to the Court a certified copy (with the raised stamp of the Clerk of the Town of Glastonbury) of an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") to HSBC on June 27, 2008.[6] Pl.'s Ex. 12. The Court finds that the original note, the certified copy of the mortgage, and the certified copy of the June 27, 2008 assignment— copies of which were introduced into evidence (Pl.'s Exs. 6, 11, 12)—were properly authenticated, genuine documents and that those documents, together with the pooling and servicing agreement and Flannigan's testimony, demonstrate by a preponderance of the evidence that HSBC was the holder of the note and mortgage at the time it commenced this lawsuit.

---

[4] HSBC filed this suit in state court on February 2, 2017, ECF No. 1-1 at 1, but Harris removed this suit to federal court on March 3, 2017, ECF No. 1. As the Court explained in its summary judgment ruling, the terms of the note make clear that a holder of the note may enforce the note. ECF No. 185 at 10.

[5] The document is titled "Fremont 2006-A, 5/01/06 scheduled balances," identifies Roney Harris as the borrower, 83 Greentree Drive, Glastonbury, CT 06033 as the property, and Wells Fargo as the original custodian of the note. Pl.'s Ex. 14. This corresponds to the pooling and servicing agreement and the PHH business record showing the chain of custody of the note, both of which also identify Wells Fargo as the original custodian of the note, further substantiating that HSBC received the note by assignment when it entered into the pooling and servicing agreement.

[6] HSBC also produced another assignment of the same mortgage between the same parties on October 22, 2008. Pl. Ex. 20. Flannigan testified that this second assignment was an error, and the Court determined that the October 22nd assignment was a nullity as the June 27, 2008 assignment had already effectuated the assignment of the mortgage to HSBC. A copy of the October 22, 2008 assignment was marked for identification only as Plaintiff's Exhibit 20.

The Court further finds, based on Flannigan's testimony and payment histories introduced into evidence, that as of February 1, 2022, Harris is in default and owes $1,329,980.98 to HSBC for the principal balance, escrow balance, and outstanding interest. *See* Pl.'s Ex. 19.[7] Further, the mortgage allows for recovery of attorney's fees,[8] and the Court finds that the affidavit, itemized billing entries, and hourly rate information submitted by HSBC with its motion for judgment of strict foreclosure show that it has incurred reasonable attorney's fees of $97,399.30, considering the complexity of the matter and the rates charged by attorneys with similar experience. ECF Nos. 196-4 at 4 (affidavit from Bendett & McHugh, P.C. seeking attorney's fees of $955), 196-5 at 5 (affidavit from Locke Lord LLP seeking attorney's fees of $96,444.30). The mortgage also allows for recovery of reasonable expenses,[9] which in this case also includes an appraisal fee of $315.00. ECF No. 196-3 at 2. The total debt owed by Harris to HSBC is, therefore, $1,427,695.28.

**B. Order Granting Strict Foreclosure**

Because HSBC became the holder of the note and the assignee of the mortgage in 2006 and 2008, respectively, because, as the Court found in its summary judgment ruling, *see* ECF No. 185, such a holder and assignee may enforce the note and mortgage, because Harris is in default under the note and mortgage and there is no equity in the Property, and because, as the Court found in its summary judgment ruling, *id.* at 11–12, HSBC has satisfied all preconditions to foreclosure, the Courts GRANTS the motion for judgment of strict foreclosure. The Court had previously entered default judgment against MERS pursuant to Fed. R. Civ. P. 55 for failure

---

[7] At the hearing, Flannigan testified that HSBC was not seeking to collect the amounts shown as late charges, fees, or recoverable balance on the payoff calculation document (Pl.'s Exs. 16-19).

[8] Under paragraph twenty-two of the mortgage, the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies [in the event of the borrower's default] provided in this Section 22 including, but to limited to, reasonable attorneys' fees and costs of title evidence." Pl.'s Ex. 11 at 12.

[9] *See supra* footnote 9.

4

to appear in this action despite being properly served. ECF Nos. 214, 215. The Court sets the first law day for **March 4, 2022** for Roney Harris and sets the second law day for **March 7, 2022** for MERS. Failure of either party to redeem the full amount of the debt prior to that party's law day will foreclose that party's interest in the Property. Absent redemption by either party, title to the Property shall vest in HSBC on March 8, 2022 and HSBC shall be entitled to immediate possession.

### C. Additional Arguments Raised by Harris at the Hearing

At the hearing, Harris raised a series of legal arguments that the Court has addressed, either in its summary judgment ruling or orally from the bench at the February 2, 2022 hearing. For the reasons provided in the summary judgment ruling and during the hearing, the Court finds that none of those arguments has merit.[10] The Clerk is instructed to close this case.

---

[10] The Court nonetheless addresses some of these arguments again in summary form here. First, Harris argues that his debts were discharged in his previous bankruptcies and, therefore, HSBC should not be able to foreclose on the Property. In support, he submitted a copy of the docket from his 2010 bankruptcy petition. Def.'s Ex. 501. As the Court explained at the hearing, a bankruptcy discharge merely prevents the collection of personal debts; it does not extinguish a mortgage lien. *See HSBC Bank USA, N.A. v. Hallums*, 183 Conn. App. 175, 179 ("A valid judicial lien is not affected by a discharge in bankruptcy. *The discharge in bankruptcy does not extinguish the underlying debt*. It only prevents the debtor from being personally liable for the discharged debt and forecloses collection of any deficiency judgment, thereby limiting the claimant to enforce its collection efforts in in rem actions against property subject to a valid, prebankruptcy lien guaranteeing payment of the debt. … *[T]he law is quite clear that liens that survive discharge in bankruptcy include, among others, the in rem liability of mortgages*." (citation and bracket omitted and emphasis added)); *see id.* at 179–80 ("[T]he Bankruptcy Code does not bar the creditor from enforcing a valid, prebankruptcy lien or security interest against property that has been retained by the estate or by the debtor after discharge.... Actions to collect against the debtor personally are enjoined. The creditor's action in enforcing a lien *is against the property and is an action in rem* with no recourse available against the debtor." (citation omitted and emphasis in original)).
  Second, Harris argues that the assignment of the mortgage occurred after the "cut-off date" in the pooling and servicing agreement and therefore, void under N.Y. Estates, Powers and Trusts Law § 7–2.4. Harris could not point to a provision in the pooling and servicing agreement setting a "cut-off date" nor could the Court find one. *See* Pl.'s Ex. 13. But even if HSBC, or any other entity, failed to comply with the terms of the pooling and servicing agreement or the provisions of New York trust law, Harris—who is not an intended beneficiary of the Trust—lacks standing to enforce the terms of the Trust. *See Rajamin v. Deutche Bank Nat'l Trust Co.*, 757 F.3d 79, 88 (2d. Cir. 2014) ("Where the challengers to a trustee's actions are not beneficiaries, and hence lack standing, the court need not decide whether the conduct of the trustee comported with the terms of the trust." (internal quotation marks and citation omitted)). And even if Harris had standing to challenge HSBC's compliance with the terms of the Trust, "a transfer into a trust that violates the terms of a [pooling and servicing agreement] is … not void but *voidable*; and [] under New York law such acts are voidable only at the instance of a trust beneficiary or a person action in his behalf." *Id.* at 90 (emphasis added).

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         February 3, 2022

---

Third, Harris argues that under UCC § 9-203, HSBC cannot pursue foreclosure against him. The Court finds nothing in that UCC provision that bars HSBC from pursuing this mortgage foreclosure action.